IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DADBOD APPAREL LLC, a California limited liability company, | ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) ) | CASE NO. 5:25-CV-1599 |
| HILDAWN DESIGN LLC, an Ohio limited liability company | ) ) ) | JUDGE: _____ |
| and | ) ) | |
| HILARY D. WERTIN, an individual | ) ) ) | |
| and | ) ) | |
| DOES 1 through 10, | ) ) ) | |
| *Defendants.* | | |

## **COMPLAINT**

## **Demand For Jury Trial**

Plaintiff Dadbod Apparel LLC for its complaint against defendants Hildawn Design LLC, Hilary D. Wertin, and Does 1 through 10, alleges as follows:

## **The Parties**

1.  Plaintiff Dadbod Apparel LLC (hereinafter, "Plaintiff") is a California limited liability company with a principal place of business at 1556 Elk Ravine Way, Roseville, California 92661.

2.  Defendant Hildawn Design LLC is, on information and belief, an Ohio limited

liability company with a principal place of business at 6334 Ewe Drive, Clinton, Ohio 44216.

3.     Defendant Hilary D. Wertin is, on information and belief, the director and registered agent for defendant Hildawn Design LLC, is a resident of and has a place of business in the State of Ohio.

4.     Plaintiff lacks the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend its complaint to allege the Does' true names and capacities when they have been ascertained.

5.     Plaintiff is informed and believes that each of the Doe defendants is responsible in some manner for the events and happenings alleged herein, including damages. Hereinafter, the named defendants and the Doe defendants are collectively referred to as "Defendants."

6.     Plaintiff is informed and believes that each of the Defendants was the agent or employee of each of the remaining Defendants and, at all relevant times herein, acted within the course and scope of such agency and/or employment.

## JURISDICTION AND VENUE

7.     This action is subject to this Court's jurisdiction pursuant to 15 U.S.C. § 1119 (power of court over registration), 28 U.S.C. § 2201 (Declaratory Judgment Act); 15 U.S.C. § 1121(a) (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (any act of congress relating to trademarks), 15 U.S.C. § 2 (monopolizing trade), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

8.     This Court has personal jurisdiction over Defendants because: 1) each Defendant is a resident of the State of Ohio; 2) each Defendant or their respective agents are doing business in this district and/or purposely directing their activities towards this district; and 3) Plaintiff is informed and believes that a substantial part of the wrongful acts alleged herein occurred in interstate commerce, in the State of Ohio, and in this district.

1

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(d) for this Court has personal jurisdiction over Defendants because: 1) each Defendant is a resident of the State of Ohio and at least one Defendant is a resident of this District; 2) each Defendant or their respective agents are doing business in this district and/or purposely directing their activities towards this district; and 3) Plaintiff is informed and believes that a substantial part of the wrongful acts alleged herein occurred in interstate commerce, in the State of Ohio, and in this district.

## FACTUAL ALLEGATIONS

10.    This dispute concerns fraudulent trademark registration and renewal, trademark misuse, intentional interference, attempted monopolization of trade, and other wrongful acts regarding Defendants' enforcement of its GIRLDAD trademark.

### *GIRLDAD Use, Registration, and Renewal*

11.    On April 13, 2016, defendant Wertin filed an "intent to use" application, under 15 U.S.C. § 1051(b), to register the GIRLDAD mark, U.S. trademark application serial no. 87000038.  The application contained the following identification of goods, "Baseball caps and hats; Shirts; Socks; Sweatshirts; T-shirts; Camouflage shirts; Polo shirts; Rugby shirts."

12.    On November 28, 2016, defendant Wertin filed a Statement of Use in connection with the GIRLDAD trademark application.  In the Statement, defendant Wertin declared "the mark is in use in commerce" as of May 28, 2016, and that she "is using the mark in commerce on or in connection with *all* the goods/services in the application or notice of allowance."  Evidence of defendant Wertin's purported use of the mark "on or in connection with *all* the goods" is a single image comprising a "digitally photographed t-shirt design using the GIRLDAD logo."  Defendant Wertin acknowledged "willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge

2

are true." See **Exhibit A** attached hereto and incorporated by reference herein.

13.   On April 25, 2017, the GIRLDAD application matured to registration, U.S. trademark registration no. 5192792.

14.   On March 9, 2023, via counsel, defendant Wertin filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 for the GIRLDAD mark.  Defendant Wertin asserted "the mark has been in continuous use in commerce for five consecutive years after the date of registration [.... ], and is still in use in commerce on or in connection with *all* goods [.... ] listed in the existing registration."  Evidence of defendant Wertin's purported continued use of the mark "on or in connection with *all* the goods" is a single image of a t-shirt comprising a "clothing hangtag and brand identification card packed with all product orders."  Defendant Wertin again acknowledged "willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true."  See **Exhibit B** attached hereto and incorporated by reference herein.

15.   On March 25, 2023, the Trademark Office audited defendant Wertin's Declaration of Use, requiring additional proof of use of the GIRLDAD mark in connection with "Socks; and Polo shirts."  On April 23, 2023, through counsel defendant Wertin responded to the audit, submitting "webpage screenshots showing the mark associated with the socks and polo shirts."  Defendant Wertin once again acknowledged "willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true."  See **Exhibit C** attached hereto and incorporated by reference herein.

16.   On or about November 8, 2023, defendant Wertin assigned, transferred, conveyed the GIRLDAD mark, registration no. 5192792, to defendant Hildawn Design LLC, Reel/Frame 008255/0402.

*GIRLDAD Trademark Enforcement*

17.    Since 2017 Plaintiff has been actively engaged in the design, manufacture, advertising, distribution, and sale of apparel, including pants, shirts, hats, shorts, sweatshirts, jackets, and accessories.

18.    Plaintiff is the owner of numerous trademarks, and the goodwill symbolized by its marks and the registrations thereof.  To protect Plaintiff's investment in its development of products and goodwill, Plaintiff obtained numerous trademark registrations including specifically U.S. trademarks for DADBOD APPAREL®, registration no. 6077397, DUMBBELLS, DEADLIFTS & DAUGHTERS®, registration nos. 6496550 and 7138473, DAD VIBES®, registration no. 6427449, and KID VIBES®, registration no. 6708288 (collectively, the "DADBOD Trademarks").

19.    Plaintiff uses the DADBOD Trademarks in the advertising and promotion of its apparel and accessories on its dadbodapparel.com website as well as third-party marketplaces Amazon, Etsy, and Tik Tok Shop.  By virtue of advertising and promotional services, together with consumer acceptance and recognition, Plaintiff's DADBOD Trademarks identifies Plaintiff's apparel only and distinguishes it from apparel offered by others. Plaintiff's DADBOD Trademarks have thus become synonymous with Plaintiff and are valuable assets symbolizing Plaintiff, its high-quality products, and its goodwill.

20.    In or about April 2022, Plaintiff introduced a line of apparel and accessories bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" residing usually inside of a quadrilateral.  The product line includes hats, shirts, sweatshirts, vinyl stickers, and flags:







21.    At all times relevant to this complaint, Defendants are and have been acutely aware of Plaintiff's business and online stores, including specifically the apparel and accessories bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" on its own website, as well as third-party marketplaces Amazon, Etsy, and TikTok Shop.

22.    Defendants' fraudulent trademark enforcement campaign began on or about June 23, 2023, when then counsel for Defendants sent a Cease and Desist letter to Plaintiff, asserting ownership in the GIRLDAD trademark, registration no. 5192792, and ambiguously asserting that on its dadbodapparel.com website Plaintiff "market similar items using the GIRLDAD Trademark."  See **Exhibit D** attached hereto and incorporated by reference herein.

23.    At no time has Plaintiff used the mark GIRLDAD purportedly owned by Defendants.  On July 10, 2023, Plaintiff, through counsel, responded to Defendant's letter,

5

seeking clarification as to what use of the "GIRLDAD" mark could have offended Plaintiff. See **Exhibit E** attached hereto and incorporated by reference herein.

24.    On or about August 22, 2023, then counsel for Defendants responded and identified the allegedly offending use, "the parenthetical reference to 'GIRL DAD' when describing the goods being sold on the Dadbod Apparel website."  Defendants neither took issue with nor even mentioned Plaintiff's purely ornamental and decorative slogan "Support Your Local Girl Dad" appearing on apparel and accessories.  See **Exhibit F** attached hereto and incorporated by reference herein.

25.    To simply appease Defendants and avoid protracted litigation, Plaintiff removed "(GIRL DAD)" references from its website and third-party marketplaces.  Thinking the matter resolved, Plaintiff focused on preparing for the 2023 holiday sales season, ensuring sufficient inventory was available for its Amazon and Etsy storefronts, including specifically apparel bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad."

26.    Plaintiff is informed and believes, and thereon alleges, that being themselves vendors on Amazon and Etsy, Defendants are acutely aware of the commercial value of a successful holiday sales season.  Defendants are also intimately aware of the negative impact allegations of intellectual property infringement can have on a vendor's sales on Amazon, Etsy, and Tik Tok Shop over the critical few weeks of a holiday season.

27.    On or about November 13, 2023, Defendants initiated trademark infringement take-down actions against Plaintiff with Amazon, Etsy, and Tik Tok, fraudulently asserting infringement of its GIRLDAD trademark.  On or about December 15, 2023, Defendants initiated two take-down actions against Plaintiff on Etsy.  On or about December 27, 2023, Defendants initiated a take-down action against Plaintiff on Amazon.  On or about December 29, 2023, and again on January 4, 2024, Defendants initiated take-down actions against Plaintiff on Etsy.  Defendants' take-down actions focused exclusively on Plaintiff's apparel bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad."  See **Exhibit G** attached hereto and incorporated by reference herein.

28.    In early December 2023, Plaintiff's counsel reached out to Defendants' then counsel to inquire about the recent take-down actions to try and resolve the matter while the critical sales window in advance of Christmas remained open.  Then counsel informed Plaintiff's counsel it has been replaced and Plaintiff reached out to Defendants' newly appointed counsel.

29.    On December 15, 2023, Plaintiff's counsel and Defendants' newly appointed counsel spoke telephonically.  During the teleconference, Plaintiff's counsel explained that the slogan "Support Your Local Girl Dad" appearing Plaintiff's goods would be perceived only as decoration and/or ornamentation, is not source-identifying, would not be perceived as a trademark, and therefore does not infringe Defendants' GIRLDAD mark.

30.    Plaintiff is informed and believes, and thereon alleges, instead of addressing the matter, Defendants new counsel feigned ignorance about the issues, offering instead a hollow promise to follow up with Plaintiff's counsel after speaking with Defendants.  Defendants continued to initiate fraudulent take-down notices after counsel spoke.  *Id*.

31.    Plaintiff is informed and believes, and thereon alleges, that since July 2023, Defendants, have and continue to conspire to disrupt and frustrate Plaintiff's sales of goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" by repeatedly submitting fraudulent trademark infringement notices on Amazon, Etsy, and Tik Tok, concerning the alleged infringement of its GIRLDAD trademark.

32.    To date, Defendants initiated more than seventy-five (75) fraudulent trademark infringement take-down notices across Amazon, Etsy, and Tik Tok Shop.  In response to Defendants fraudulent take-down notices, Amazon, Etsy, and Tik Tok removed from Plaintiff's storefronts all goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad."  Further, due to Defendants repeated fraudulent take-down notices, Etsy and Tik Tok Shop closed Plaintiff's seller accounts, eliminating Plaintiff's ability to advertise and/or sell its goods thereon.

33.    Plaintiff is informed and believes, and thereon alleges, that Defendants'

fraudulent trademark enforcement scheme is willful and calculated to damage Plaintiff's reputation with Amazon, Etsy, and Tik Tok, reduce and/or eliminate Plaintiff's ability to sell its goods, and divert sales to Defendants that otherwise would have gone to Plaintiff.

34.    Plaintiff is informed and believes, and thereon alleges, Defendants were well aware that if Plaintiff took no action in response to Defendants' fraudulent take-down notices, or if the third-party marketplaces deemed Plaintiff a repeat/habitual infringer, its product listings would be permanently removed, which would necessarily affect its sales and activities, particularly in California.

35.    Plaintiff is informed and believes, and thereon alleges, that Defendants' fraudulent Cease and Desist letters and take-down notices were attempts to wrongfully expand Defendants' market share by reducing competition for apparel and accessories merely bearing the words "GIRL" and "DAD."  Defendants have engaged in similar, if not identical, fraudulent behavior against other competitors throughout the United States.

36.    Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, have agreed among themselves to act, and have acted, in concert for the purpose of unfairly injuring, usurping, and appropriating to themselves Plaintiff's business, reputation, and goodwill in one or more of the following ways:

      a.  Adopting and implementing a fraudulent trademark enforcement scheme on Amazon, Etsy, and Tik Tok Shop against Plaintiff concerning the alleged infringement of Defendants' GIRLDAD trademark;

      b.  Reducing and/or eliminating competition by implementing the fraudulent trademark enforcement scheme against Plaintiff, thereby diverting sales to Defendants that would have otherwise gone to Plaintiff; and

      c.  Continuing to assert its GIRLDAD trademark against Plaintiff's Amazon and Etsy stores, even after Plaintiff's notice that goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" do not constitute trademark infringement.

37.   As a result of the actions described above, Plaintiff has lost and is at risk of losing further substantial business.  The harm to Plaintiff's business cannot be adequately redressed by damages since Plaintiff's business reputation and the continuing value of the "Support Your Local Girl Dad" slogan is jeopardized by Defendants' acts.  Further, the injury to Plaintiff's reputation will continue to accrue unless and until Defendants are enjoined from enforcing the GIRLDAD mark and/or interfering with Plaintiff's business relationships with Amazon, Etsy, and Tik Tok Shop.

## FIRST CLAIM FOR RELIEF

### (*Cancellation of GIRLDAD Trademark, Reg. No. 5192792 - Fraud*)

38.   Plaintiff repeats and incorporates by reference into this claim each of the preceding and following allegations of this complaint.

39.   Defendants' "Official Girldad Brand" Facebook page contains social media images posted by Defendants from June 2016 through the present.  Said page markets, advertises, and/or displays socks, sweatshirts, camouflage shirts, polo shirts, and/or rugby shirts bearing the GIRLDAD mark exactly zero times in the last nine (9) years.  See **Exhibit H** attached hereto and incorporated by reference herein.

40.   A search for "socks," "polo," and "rugby" returns no results on Defendants' website, Amazon store, and Etsy store.   See **Exhibit I** attached hereto and incorporated by reference herein.

41.   Plaintiff is informed and believes, and thereon alleges, Defendants have never used the GIRLDAD mark in connection with "Socks; Sweatshirts; Camouflage shirts; Polo shirts; [or] Rugby shirts."

42.   Plaintiff is informed and believes, and thereon alleges, to the extent Defendants used the GIRLDAD mark in connection with "Socks; Sweatshirts; Camouflage shirts; Polo shirts; [or] Rugby shirts," they did not do so as of November 28, 2016, when defendant Wertin filed the Statement of Use in the GIRLDAD trademark application.  See **Exhibit A**.

43.    Plaintiff is informed and believes, and thereon alleges, the Statement of Use contains a materially false declaration that "applicant is using the [GIRLDAD] mark in connection on or in connection with *all* the goods/services in the application or notice of allowance."  Defendants submitted the materially false declaration with the intent to mislead the USPTO into believing Defendants were using the GIRLDAD mark in connection with all goods listed in its application.  Defendants did so to obtain registration of its GIRLDAD mark.  But for Defendants' deception, the USPTO would not have granted registration of the GIRLDAD mark.

44.    Plaintiff is informed and believes, and thereon alleges, to the extent Defendants ever used the GIRLDAD mark in connection with "Socks; Sweatshirts; Camouflage shirts; Polo shirts; [or] Rugby shirts," they did not do so as of April 25, 2017, when they filed the Combined Declaration of use and Incontestability under Section 8 & 15.  See **Exhibit B**.

45.    Plaintiff is informed and believes, and thereon alleges, the Combined Declaration of Use and Incontestability contains a materially false declaration that "the [GIRLDAD] mark is in use in commerce on or in connection with **all** of the goods[…. ] listed in the existing registration for this specific class: Baseball caps and hats; Shirts; Socks; Sweatshirts; T-shirts; Camouflage shirts; Polo shirts; Rugby shirts; **and** the [GIRLDAD] mark has been continuously used in commerce for five (5) consecutive years after the date of registration[…. ] and is still in use in commerce on or in connection with **all** goods."  Defendants submitted the materially false declaration with the intent to mislead the USPTO into believing Defendants were using the GIRLDAD mark in connection with *all* goods listed in its registration.  Defendants did so to obtain incontestability and renewal of its GIRLDAD trademark.

46.    Plaintiff is informed and believes, and thereon alleges, Defendants also submitted false specimens with the intent to mislead the USPTO into believing Defendants were using the GIRLDAD mark in connection with "Socks; and Polo shirts."  See **Exhibit C**. Defendants did so to obtain incontestability and renewal of its GIRLDAD trademark,

10

registration.  But for Defendants' deceptions, the USPTO would not have renewed the GIRLDAD registration or deemed the mark incontestable.

47.   Plaintiff is harmed by Defendants' fraudulent registration, which forms the basis of this action and is being used for improper purposes.  Defendants' GIRLDAD registration should be cancelled for fraud under 15 U.S.C. § 1064(3).

## SECOND CLAIM FOR RELIEF

### (*Declaratory Judgment of Non-Infringement*)

48.   Plaintiff repeats and incorporates by reference into this claim each of the preceding and following allegations of this complaint.

49.   This is an action for a declaratory judgment and further relief against Defendants pursuant to 28 U.S.C. §§ 2201 and 2202.

50.   Defendants have accused Plaintiff of trademark infringement pursuant to 15 U.S.C. §§ 1114 and 1125(a).

51.   Plaintiff denies Defendants' allegations of trademark infringement as set forth above.

52.   Defendants' allegations of infringement pose a threat to Plaintiff's business and have and will continue to harm Plaintiff until such claims are resolved.

53.   As a result of the foregoing, an actual case or controversy exists regarding Defendants' allegations of trademark infringement.

54.   Plaintiff has no adequate remedy at law and therefore seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201−02 that Plaintiff does not and has not infringed Defendants' GIRLDAD trademark, registration no. 5192792.

55.   Plaintiff additionally seeks any further relief deemed appropriate by this Court pursuant to 28 U.S.C. § 2202.

## THIRD CLAIM FOR RELIEF

### (*Intentional Interference with Prospective Economic Advantage*)

56.    Plaintiff repeats and incorporates by reference into this claim each of the preceding and following allegations of this complaint.

57.    A defendant intentionally interferes with a prospective economic advantage where a plaintiff has an existing economic relationship with third-party marketplaces with the probability of future economic benefit to plaintiff, where the defendant has knowledge of that relationship, where the defendant engages in intentional acts designed to disrupt the relationship, actual disruption of the relationship occurs, and the plaintiff suffers economic harm because of defendant's acts.

58.    Plaintiff has a preexisting economic relationship and prior dealings with Amazon, Etsy, and Tik Tok Shop.

59.    A probable future economic benefit to Plaintiff existed insofar as Amazon, Etsy, and Tik Tok Shop allowed for the advertisement and sale Plaintiff's goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad."

60.    Defendants were aware of Plaintiff's relationships with Amazon, Etsy, and Tik Tok Shop to the extent that on or about November 13, 2023, Defendants initiated its fraudulent trademark enforcement take-down actions with Amazon, Etsy, and Tik Tok Shop against Plaintiff, wrongfully asserting infringement of Defendants' GIRLDAD trademark.

61.    Defendants intentionally and maliciously sent the fraudulent trademark infringement take-down notices to Amazon, Etsy, and Tik Tok Shop with a clear intent at actual disruption of the economic relationship between the third-party marketplaces and Plaintiff, knowing Amazon, Etsy, and Tik Tok Shop would immediately remove Plaintiff's goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" during the critical holiday sales season.

62.    As a result of Defendants' malicious acts, Plaintiff has been harmed.  Plaintiff's full realization of its economic relationship with Amazon and Etsy and Tik Tok Shop, and

ability to market and sell goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" has been prohibited by the intentional interference and Plaintiff has been forced to engage legal services related to the allegations in the fraudulent notices.

63.    The acts were carried out by Defendants in a malicious, willful, and oppressive manner with the intent to injure and damage Plaintiff, entitling Plaintiff to recover exemplary damages.  Defendants' decision to intentionally and maliciously send fraudulent correspondence to prospective economic relationships was done with the intent to injure Plaintiff.

64.    Defendants' officers, directors, and managerial and supervisory employees participates in the unlawful conduct as alleged above or had actual knowledge that the above-alleged conduct was unlawful and nevertheless authorized and/or ratified the practices with conscious disregard of the rights and safety of Plaintiff.

### FOURTH CLAIM FOR RELIEF

### (*Violation of Sherman Act, Section 2*)

65.    Plaintiff repeats and incorporates by reference into this claim each of the preceding and following allegations of this complaint.

66.    Defendants, by virtue of their continued attempts to misuse the GIRLDAD trademark, have purposefully and intentionally attempted to obtain a monopoly in violation Section 2 of the Sherman Acts, 15 U.S.C. § 2.

67.    Plaintiff are competitors of Defendants in the apparel market in the United States.  Plaintiff has been and is presently engaged in the design, manufacture, advertising, distribution, and sale of apparel and accessories bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad."

68.    Defendants have made the improper attempt to enforce the GIRLDAD trademark to knowingly and intentionally eliminate, injure, or destroy competition in the

13

United States for apparel and accessories merely bearing the terms "Girl" and "Dad."

69.    Defendants have raised the specter of a dangerous probability of success in driving out competing suppliers, distributors, and sellers in the domestic market for apparel and accessories merely bearing the terms "Girl" and "Dad," thereby damaging, lessening, and injuring competition in that Defendants' frivolous and baseless trademark enforcement is nothing more than economic coercion that will cause Plaintiff to cease doing business in the United States market.

70.    Defendants' illicit conduct has directly and proximately caused damage to Plaintiff in a total amount to be proved at trial, but in any event, not less than $ 1 million. Said damages should be trebled pursuant to 15 U.S.C. § 15.

## FIFTH CLAIM FOR RELIEF

### (*Unfair Competition*)

71.    Plaintiff repeats and incorporates by reference into this claim each of the preceding and following allegations of this complaint.

72.    Ohio Revised Code § 4165.01, et seq. and Ohio common law prohibit unlawful, unfair, or deceptive business practices.

73.    Defendants have engaged, and continue to engage, in unlawful and/or deceptive trade practices in violation of Ohio law as described in this complaint, including, but not limited to:

      a.    Making materially false statements to the United States Patent and Trademark Office with the specific intent to fraudulently register and renew the GIRLDAD trademark;

      b.    Adopting and implementing a fraudulent trademark enforcement scheme on Amazon, Etsy, and Tik Tok Shop against Plaintiff concerning the alleged infringement of Defendants' GIRLDAD trademark;

      c.    Reducing and/or eliminating competition by implementing the fraudulent

trademark enforcement scheme against Plaintiff, thereby diverting sales to Defendants that would have otherwise gone to Plaintiff; and

a. Continuing to assert its GIRLDAD trademark against Plaintiff's Amazon and Etsy stores, even after Plaintiff's notice that goods bearing the purely ornamental and decorative slogan "Support Your Local Girl Dad" do not constitute trademark infringement.

74.    The illegal, unlawful and unfair conduct of Defendants is in violation of the law.

75.    The acts of Defendants alleged herein were done in the course of business, and for a business purpose.  As a proximate result of these unlawful and unfair business practices, the public has been and continues to be deceived.  Plaintiff is entitled to injunctive relief restraining Defendants, their agents, servants, and employees, and all persons acting under, in concert with, or for them, from committing or continuing any of the unfair business practices alleged herein, or any other business practice which unfairly harms Plaintiff, or which is likely to deceive the public.

76.    As a further direct and proximate result of Defendants' fraudulent trademark registration, renewal , and enforcement scheme, Plaintiff has suffered economic damages, which continue to accrue by the continuance of such wrongful conduct, and Plaintiff is therefore entitled to an award of compensatory damages according to proof.

77.    Defendants have also been unjustly enriched by profits derived from sales that, but for Defendants fraudulent trademark actions, would have otherwise gone to Plaintiff; Defendants should be ordered to account for such profits and pay them over to Plaintiff.

78.    The aforementioned conduct of Defendants was oppressive and malicious, and done in conscious disregard of the rights of Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages for such conduct and reasonable attorney's fees, as allowed by law.

79.    No complete remedy exists at law for the injuries suffered by Plaintiff herein insofar as further irreparable harm will result to Plaintiff from Defendants' continued or

15

future violation of Ohio law absent injunctive relief.  Therefore, Plaintiff requests appropriate injunctive relief.

## SIXTH CLAIM FOR RELIEF

### (*Unjust Enrichment*)

80.    Plaintiff repeats and incorporates by reference into this claim each of the preceding and following allegations of this complaint.

81.    Defendants, through the conduct alleged herein, have received the benefits of reduced competition and profits that, but for Defendants' fraudulent trademark enforcement scheme, would have otherwise gone to Plaintiff.

82.    At Plaintiff's expense, Defendants have unjustly retained the benefits of reduced competition and profits that, but for Defendants' fraudulent trademark enforcement scheme, would have otherwise gone to Plaintiff.

83.    As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Defendants have been unjustly enriched through implementation of its fraudulent trademark enforcement scheme against Plaintiff, and Plaintiff has been deprived of money that was wrongfully paid to Defendants, which, absent Defendants' violations, would have otherwise been due to Plaintiff.  Plaintiff is entitled to restitution of any and all such sums in an amount to be determined at trial.

84.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Plaintiff is informed and believes and thereon alleges that unless enjoined and restrained by this Court, Defendants will continue to engage in unlawful and wrongful conduct, in violation of the law.  Plaintiff is entitled to preliminary and permanent injunctive relief.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1.    Cancellation of the GIRLDAD trademark, registration no. 5192792;

2.    Entering judgment that Plaintiff has not infringed the GIRLDAD trademark, registration no. 5192792;

3.    Awarding Plaintiff general, compensatory, and consequential damages in a sum to be proven at trial, but in any event, not less than $ 1 million;

4.    For restitution from Defendants, and each of them, for said unjust enrichment;

5.    Awarding Plaintiff treble damages pursuant to Title 15, United States Code;

6.    Finding this to be an exceptional case and awarding Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1117(a), pursuant to 15 U.S.C. § 15, and pursuant to Ohio Revised Code §4165.03(B); and

7.    Granting such other and further relief as it may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Dadbod Apparel LLC hereby demands a trial by jury on all issues so triable.

Dated: August 1, 2025                    Respectfully submitted,

                                         **EMERSON, THOMSON & BENNETT, LLC**

                                         *s/ Sergey Vernyuk*
                                         Sergey Vernyuk (Ohio Bar # 0089101)
                                         sv@etblaw.com
                                         1914 Akron-Peninsula Road
                                         Akron, Ohio 44313
                                         (330) 434-9999 – Telephone
                                         (330) 434-8888 – Facsimile
                                         *Attorneys for Plaintiff*

17

**GARVEY ADAM LLP**

*s/ Joshua A. Schaul*
Joshua A. Schaul (*Pro Hac Vice* motion forthcoming)
schaul@garveyadam.com
19800 MacArthur Boulevard, Suite 1070
Irvine, California 92612
(714) 924-4377 – Telephone
*Attorneys for Plaintiff*